IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02011–WJM–KMT

THERESA CHRISTIE,

    Plaintiff,

v.

LOOMIS ARMORED US, INC.,

    Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the court on Defendant "Loomis' Motion to Compel Arbitration and Stay Proceedings" filed October 13, 2010. (Doc. No. 8 [Mot.].) Plaintiff filed her response on October 25, 2010 (Doc. No. 11 [Resp.]), and Defendant filed its reply on November 8, 2010 (Doc. No. 15 [Reply]). This matter is ripe for ruling and recommendation.

## FACTUAL BACKGROUND

*1.     Facts*

In her Complaint, Plaintiff asserts claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Title VII); the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (ADEA); Title V of the Americans with Disabilities Act, 42 U.S.C. § 12201, *et seq.*; and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (*See* Doc. No. 1.) Defendant's Motion argues that as a condition of her employment with Loomis, Plaintiff signed a "Pre-Dispute Resolution Agreement" (Agreement), in which she

agreed that if she sought relief in a court of competent jurisdiction for claims related to her employment and termination, such claims would be subject to arbitration. (Mot., ¶ 1.) Accordingly, Defendant seeks an order compelling arbitration and staying the proceedings in this case. (*Id.*)

## ANALYSIS

The Federal Arbitration Act (FAA) requires a court to compel arbitration pursuant to the terms of the parties' agreement if a valid, enforceable arbitration agreement exists and the asserted claims are within the scope of that agreement. 9 U.S.C. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, when the parties dispute the existence of a valid arbitration agreement, there is no presumption in favor of arbitration. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir.2002). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir.1997). There is no dispute that the claims asserted in this case are within the scope of the Agreement. Instead, Plaintiff argues the contract is void *ab initio* and that Plaintiff has a constitutional right to a jury trial. (*See* Resp.)

*A.     The Agreement Is Not Void*

*1.     The Agreement Is Not an Adhesion Contract*

A federal court in a diversity case such as this applies the choice of law principles of the forum state. *Elliot v. Turner Constr. Co.*, 381 F.3d 995, 1001 (10th Cir.2004). The

2

determination of whether an agreement is an adhesion contract is a question of law for the court. *Jones v. Dressel*, 623 P.2d 370, 374 (Colo. 1981). An adhesion contract is defined as "a contract drafted unilaterally by a party and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Id.* (citation omitted). However, even a "printed form" contract that is "offered on a 'take-it-or-leave-it' basis" will not constitute an adhesion contract without "a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation, or that (the) services could not be obtained elsewhere." *Id.* (citations and quotation marks omitted).

Plaintiff contends that the contract was a "take-it-or-leave-it" contract that gave Plaintiff no opportunity to negotiate and that Plaintiff's only option was to sign the contract or forgo an opportunity for gainful employment. (Resp. at 2.) Plaintiff also argues that because she has a high school diploma, while Defendant is an international corporation with a cadre of professionals to manage its vast employee network, the parties have greatly disparate bargaining power. (*Id.*)

There is no dispute that, in order for Plaintiff to obtain employment with the Defendant, she had to sign the Agreement and that Plaintiff could not truly negotiate or re-write any provisions of the Agreement. The Agreement advised Plaintiff to "Please Read Carefully" and that she could take a copy of the Agreement with her to consult with an attorney prior to signing it. Moreover, Plaintiff could have sought and obtained employment elsewhere if she had chosen not to sign the Agreement. The court finds, therefore, that the contract is not an adhesion contract.

"Employment contracts do not fit easily into [the] understanding of contracts of adhesion." *Gooden v. Village Green Management Co.*, Civ. 02-835, 2002 WL 31557689, at *3 (D. Minn. Nov. 15, 2002). "Employment contracts are typically offered on a 'take-it or leave-it' basis; they often are drafted entirely by employers and offered for employees to sign as a condition of employment. Contracts signed under such conditions are susceptible to the presence of unconscionable terms." *Gooden*, 2002 WL 31557689, at *3. In this vein, the Tenth Circuit has held, outside of an employment contract context, that an arbitration clause contained in an adhesion contract is not necessarily unenforceable. *See Abrams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696 (10th Cir. 1989) (arbitration clauses in standard brokerage agreements). The Tenth Circuit held, however, that een though the investors had "no real opportunity to negotiate the terms because signing the agreement was a prerequisite to doing business in the securities market," the arbitration clauses were enforceable. *Abrams*, 888 F.2d at 700. The court found no authority to support the contention that arbitration clauses are inherently unconscionable or unfair, even if they are contained in contract of adhesion. *Id.* Thus, the critical issue is not whether these parties' agreement to arbitrate should be labeled an adhesion contract (or whether it was procured through procedurally unconscionable means), but whether, in substance, the agreement is unconscionable or otherwise unenforceable.

Here, Plaintiff makes no argument that the terms of this particular agreement are unfair or unconscionable. *Cf. Dumais*, 299 F.3d at 1219-20 (invalidating agreements to arbitrate because they were illusory in that they allowed one party the unfettered right to alter the existence or scope of the agreement); *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234–35

4

(10th Cir. 1999) (finding arbitration agreement unenforceable because it imposed prohibitively high costs on claimants). As such, the Agreement should be enforced.

### 2. *The Terms of the Contract are Sufficiently Clear*

Plaintiff next argues that the term of the Agreement are unclear and, thus, the contract fails for want of a "meeting of the minds." (Resp. at 4–5.) In support of her argument Plaintiff points to several portions of the Agreement containing long sentences, typographical errors, and legalese. (*Id.*)

Under Colorado State law, an enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration. *Denver Truck Exchange v. Perryman*, 307 P.2d 805, 810 (1957), *see also Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) ("A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration."). "Agreement to essential contractual terms is evidenced by the parties' manifestations of mutual assent." *Schmidt v. Frankewich*, 819 P.2d 1074, 1077 (Colo. App. 1991). "If the parties fail to agree to sufficiently definite and certain terms, there is no meeting of the minds and, hence, no valid contract." *Id.* All material terms must be agreed to in order for a contract to be valid. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001).

Although the sentences and portions of the Agreement referred to by Plaintiff might, if construed in isolation, be less than perfect, Colorado law requires all portions of the contract be construed in light of the agreement as a whole. *See Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001) ("in contract law . . . language should be construed as a whole, and

specific phrases or terms should not be interpreted in isolation"); *Town of Silverton v. Phoenix Heat Source Sys., Inc.*, 948 P.2d 9, 11 (Colo. App.1997) ("The meaning of a contract is found by examining the entire instrument, not by viewing clauses or phrases in isolation."). Moreover, although the portions of the Agreement referenced by Plaintiff may be long and contains some "legalese" and typographical errors, they are not unclear or equivocal. *See Pearce v. Utah Athletic Foundation*, 179 P.3d 760, 767 (Utah 2008) (citing *Freund v. Utah Power & Light Co.*, 793 P.2d 362, 371 (Utah 1990). Upon a review of the Agreement in its entirety, this court finds that it is not unclear or ambiguous as to its material terms–that the Plaintiff, by signing the Agreement, waived her right to a trial by jury; that the defendant may require all of part of the dispute to be arbitrated; and that the Agreement covers all matters directly or indirectly related to Plaintiff's employment or termination of employment. (*See* Doc. No. 9.)

### 3. *Failure of Loomis to Execute Agreement Does Not Invalidate the Agreement*

Plaintiff next contends that the Agreement is invalid because it was not signed by a representative for the defendant company. (Resp. at 5.) The Colorado Court of Appeals recently held that the lack of a signature, in an of itself, does not invalidate an otherwise enforceable arbitration agreement. The Court held:

> "[C]ommon law contract principles allow for the formation of contracts without the signatures of the parties bound by them." *Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo. 2008); *see Lane v. Urgitus*, 145 P.3d at 677 ("we follow state law principles governing contract formation" when determining whether parties have agreed to arbitrate). Arbitration agreements in Colorado have also been found to be binding on nonsignatories under some circumstances. *See Smith v. Multi-Financial Sec. Corp.*, 171 P.3d 1267, 1272 (Colo. App. 2007).
> Court decisions under the Federal Arbitration Act, 9 U.S.C. § 2, have held that no signature is required to satisfy the Act's requirements for a binding

>arbitration agreement. *See, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d
>1359, 1369 (11th Cir. 2005) (citing "overwhelming weight of authority" in
>support of conclusion that the Federal Arbitration Act does not require a
>signature); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987)
>("it is well-established that a party may be bound to an agreement to arbitrate
>even absent a signature"); *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d
>345, 348 (10th Cir. 1973).

*E-21 Engineering, Inc. v. Steve Stock & Assoc., Inc.*, No. 09CA1840, 2010 WL 3035168, at *2 (Colo. App. Aug. 5, 2010). Therefore, the lack of a signature by a representative for the defendant company does not invalidate the Agreement.

### 4.    *Condition Precedent Does Not Render Agreement Ambiguous*

Plaintiff next makes the illogical argument that, because the Agreement contains a condition precedent to Plaintiff's employment, the contract is ambiguous. (Resp. at 5.) The condition Plaintiff contends is ambiguous is contained in the last sentence of the Agreement, stating, "YOU WILL NOT BE OFFERED EMPLOYMENT UNTIL THIS AGREEMENT IS SIGNED AND RETURNED TO YOU." (Doc. No. 9.) In favor of her argument, Plaintiff cites *Dinnerware Plus Holdings, Inc. v. Silverthorne Factory Stores, LLC*, 128 P.3d 245 (Colo. App. 2004), in which the court stated that "conditions precedent are not favored and will not be given effect unless established by clear and unequivocal language." *Dinnerware*, 128 P.3d 245, at 247. The court cannot fathom how the sentence at issue could not be more clear or unequivocal.

Defendant, giving Plaintiff the benefit of the doubt in her argument, counters that employers often require specific conditions before hiring a person, and that the *Dinnerware* court upheld a condition precedent regarding tenants' obligations to pay pass-through charges to their landlord. (Reply at 4 [citing *EEOC v. Home Depot, USA, Inc.*, No. 06-cv-01950-LTB-CBS,

2008 WL 2744968, at *1 (D. Colo. July 11, 2008), and *Dinnerware*, 128 P.3d at 247, 249].) The court agrees with Defendant. It is not uncommon for an employer to require an employee to sign an arbitration agreement as a condition of employment. *See Gooden*, 2002 WL 31557689, at *3. Moreover, the court finds the condition at issue here is clear and unequivocal.

### 5. *Defendant's Motion to Compel Arbitration and Stay Does Not Change the Scope of the Agreement and Does Not Render the Agreement Illusory*

Plaintiff next argues that the Agreement is illusory because it allows the defendant to seek arbitration of all or a part of a dispute. (Resp. at 6.) Plaintiff also contends that Defendant, in filing the present motion to compel arbitration and to stay the proceedings, is attempting to alter the terms of the Agreement, making the Agreement an unenforceable illusory contract. (*Id.*)

The Tenth Circuit has held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais*, 299 F.3d at 1219. However, in *Dumais*, the Court was concerned with cases in which one party was able to modify the arbitration provision without notice to the employee. *Id.* Here, the Agreement clearly described the scope of the right to arbitration, and the plaintiff has had notice of the right since she signed the Agreement. (*See* Doc. No. 9.) Moreover, Defendant, in filing the present motion, is not attempting to alter the existence or scope of the Agreement, but only to enforce the agreement. This court concludes, therefore, that the Agreement is not illusory.

Finally, federal courts typically stay proceedings in which parties have agreed to mediation, *see Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 771 (10th Cir. 2010), and the FAA

provides that once a federal court determines a case is referable to arbitration the court should stay the action until the arbitration is completed in accordance with the terms of the agreement, *see* 9 U.S.C. § 3.

**B.     *Plaintiff Waived Her Right to a Jury Trial***

   **1.     *Constitutional Right to a Jury Trial May Be Waived***

Plaintiff argues that she has a constitutional right to a jury trial. (Resp. at 7.) The right to a jury trial in the federal courts is governed by federal law. *Simler v. Conner*, 372 U.S. 221, 221–22 (1963). "Agreements waiving the right to trial by jury are neither illegal nor contrary to public policy." *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 836 (10th Cir. 1988) (citing *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th Cir. 1942)).

> Where a jury trial waiver is claimed under a contract executed before litigation, it must be shown that the waiver was assented to knowingly, voluntarily, and intelligently.
>
> \* \* \*
>
> Courts consider a number of factors when determining whether a contractual jury trial waiver was entered into knowingly, voluntarily, and intelligently. Those factors include: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. Although the factors play an important role in the Court's decisionmaking process, it is not whether any particular number of factors have been satisfied, but whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair.

*Postnet Intern. Franchise Corp. V. Amercis Int'l Franchise Corp.*, No. 06-cv-00125-PSF-BNB, 2006 WL 1775599, at \*1 (D. Colo. June 26, 2006) (quoting *Allyn v. Western United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004)).

Plaintiff cites *Dreiling v. Peugeot Motors of America, Inc.*, 539 F. Supp. 402 (D. Colo. 1982), in support of her contention that her waiver may not have been knowing or voluntary. (Resp. at 7.) However, in *Dreiling,* the court determined the plaintiff's "right to a jury trial [could not] be waived unknowingly by mere insertion of a waiver provision on the twentieth page of a twenty-two page standardized form contract." *Dreiling*, 539 F. Supp. at 403. The *Postnet* court, on the other hand, upheld a jury trial waiver that was neither capitalized, italicized, bolded or otherwise highlighted and that appeared on the thirty-third page of a contract. *Postnet,* 2006 WL 1775599, at *2. Here, Plaintiff signed a less-than-one-page Agreement that clearly and expressly disclosed that, by signing the Agreement, Plaintiff "agrees to waive [her] right to trial by jury, and further agrees that no demand[,] request or motion will [be] made for a trial by jury." (*See* Doc. No. 9.)

Regarding the second *Postnet* factor, the court required only that the parties be "sufficiently sophisticated to understand the meaning of the [contract.]" 2006 WL 1775599, at *3. Plaintiff was over forty years of age at the time she entered into the contract (Doc. No. 1, ¶¶ 57, 97). (Resp. at 9.) Moreover, the Agreement advised the Plaintiff to "Please Read Carefully." (Doc. No. 9.) There is no indication that Plaintiff had any difficulty reading the document prior to signing it or that she had any questions about it. Moreover, Plaintiff signed the Agreement, thereby acknowledging that she read it and read it carefully. This court finds that Plaintiff was sufficiently sophisticated to knowingly, voluntarily, and intelligently waive a jury trial in the context of the Agreement she signed.

As to the third and fourth factors, Plaintiff argues that the waiver is not valid because she had no opportunity to negotiate the terms of the Agreement and that the waiver is unenforceable because there is a great disparity in bargaining power between the defendant and her. (Resp. at 8–9.) However, as *Postnet* found, "Although the jury waiver clause was not subject to negotiation, [the defendant] was free to reject the [] Agreement . . . . A contract clause is not unenforceable merely because one party to the contract insists on it." *Id.* at *3. As in *Postnet,* the plaintiff here was free to seek and obtain employment elsewhere if she had chosen not to sign the Agreement.

As to the fifth factor, Plaintiff argues that the waiver is not valid because she was not represented by counsel in negotiating the contract. (Resp. at 9.) However, Defendant counters that it was not represented by counsel in negotiating the Agreement either. (Reply at 10.) In *Postnet*, the court upheld a jury trial waiver under circumstances in which the party was given the opportunity to be represented by counsel and decided not to do so. *Id.*, at *3. Here, the defendant expressly advised Plaintiff that she could "CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT . . . ." (Doc. No. 9.)

Taking all of the *Postnet* factors into consideration, the court finds that Plaintiff's waiver of her right to a jury trial was knowing, intentional, and intelligent.

### 2.     *The Jury Trial Waiver is Unambiguous*

Finally, Plaintiff again argues that the jury trial waiver language is ambiguous. The court, again, finds that this argument without merit. The Agreement clearly states that Plaintiff

11

"agrees to waive [her] right to trial by jury, and further agrees that no demand[,] request or motion will [be] made for a trial by jury." This language is clear and unambiguous.

The court, having determined Plaintiff's arguments in opposition to the enforcement of Resolution Agreement fail, finds this case is subject to arbitration.

### C.    *Motion to Stay Case Until Arbitration is Complete*

Defendant moves for a stay of this case pending completion of arbitration. The Federal Arbitration Act states as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2008) (emphasis added). Therefore, having determined this case is "referable to arbitration" under the Agreement, a stay of the case is appropriate.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendant "Motion to Compel Arbitration and Stay Proceedings" (Doc. No. 8) be GRANTED, and that the case be stayed pending completion of arbitration.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of March, 2011.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge