**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 10–cv–02011–WJM–KMT

THERESA CHRISTIE,

Plaintiff,

v.

LOOMIS ARMORED US, INC.,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Teresa Christie ("Plaintiff") bring this action against her former employer, Loomis Armored US, Inc. ("Defendant") alleging age, gender, and disability discrimination, as well as retaliation and wrongful discharge in violation of public policy. (ECF No. 1.) Before the Court is Defendant's Motion for Summary Judgment ("Motion"). (ECF No. 78.) For the reasons set forth below, the Motion is granted.

## I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows.

Defendant Loomis is an armed security business that delivers and retrieves orders for cash and coin from banks, stores, and other customer locations. (Pl.'s Dep. (ECF No. 79-1) p. 101.) When Defendant's trucks are in service, they are staffed by two individuals, a driver and a messenger, who collectively are referred to as "driver-guards". (*Id*. at 154.) In June 2002, Plaintiff began work as a driver-guard at Defendant's Denver, Colorado branch. (ECF No. 55.) Like most other driver-guards, Plaintiff initially alternated between serving as a driver and a messenger on her shifts. (Pl.'s Dep. at 107.)

In September 2005, Plaintiff was seriously injured in a non-work accident and lost most of the functioning in one of her hands. (*Id*. at 108-110.) She returned to work in April 2006 and, as an accommodation for her medical restriction, Defendant permitted her to perform her job as a "driver-only". (*Id*. at 126 & 131; ECF No. 55.) With few exceptions, Plaintiff was not required to work in the messenger role. (Pl's

Dep. at 125-26.)

Chris Werner began working at Loomis in March 2007. (ECF No. 96 at 11.) Shortly thereafter, Plaintiff approached him about working on the same truck as Werner wanted to work as a messenger only and she was limited to working only as a driver. (Pl's. Dep. at 170.) Plaintiff began noticing that Mr. Werner exhibited some errant behavior, which she eventually believed was caused by alcohol abuse. (*Id*. at 249-60.) Plaintiff did not report Werner's behavior when she first began noticing it.

In October 2007, Defendant sent a memo to all employees in the Denver branch stating that, subject to limited exceptions, employees would no longer be permitted to work as a "driver-only" ("October 2007 Memo"). (ECF No. 78-7.) Plaintiff's position was one of the grandfathered exceptions to this new policy. (Anderson Dep. (ECF No. 79-2) p. 175-76.) Thus, even after the October 2007 Memo, Plaintiff was permitted to work only as a driver and was not required to work as a messenger. (Pl.'s Dep. at 145-46.)

Shortly after receiving the October 2007 Memo, Plaintiff reported to management her belief that Mr. Werner was drinking on the job. (Pl.'s Dep. at 261-62; Anderson Dep. (ECF No. 79-2) p. 99.) Chris Anderson, a manager at the Denver facility, went to the truck bay to investigate. (Anderson Dep. at 99.) Anderson did not find any evidence to substantiate Plaintiff's complaint. (*Id*. at 100-103.) Werner was permitted to stay on the scheduled shift he had shared with Plaintiff; Plaintiff was taken off of her steady route and made a floater. (Anderson Dep. at 174.)

Plaintiff was dissatisfied with the outcome of Defendant's investigation into her report of Werner's drinking and she sent two letters to Defendant's President expressing such dissatisfaction. (ECF No. 79-7.) Plaintiff also discussed her

dissatisfaction with management's handling of the Werner situation with her co-workers. (Pl.'s Dep. at 196-97.)

In April 2008, Plaintiff was warned by Christina Kirby, Defendant's Human Resources Manager, that she was not to discuss the Werner situation with anyone. (ECF No. 96-4.) Plaintiff was then suspended for one shift for allegedly continuing to discuss the matter with a co-worker. (ECF No. 79-9.) A few days after being counseled and suspended, Plaintiff spoke with yet another co-worker about whether Werner was smoking on the truck. (ECF No. 79-12.) Plaintiff was again counseled and suspended for two shifts, and warned that she needed to stop "any and all forms of harassment against Christopher Werner immediately or she will be terminated." (*Id.*)

Plaintiff served her suspension and worked without incident for the next seven months. On November 20, 2008, Plaintiff completed a vehicle condition report ("VCR") stating that the truck she had driven on her shift had a number of mechanical issues. (ECF No. 78-17.) Mechanics drove the truck the following day but were unable to confirm any of Plaintiff's reported issues. (ECF Nos. 78-18 & 78-19.) Defendant's area fleet manager wrote Anderson a letter stating that the mechanics were "still having problems with" Plaintiff because she was "writing up concerns that are not accurate." (ECF No. 78-20.) The letter stated that Plaintiff had made it clear to the mechanics that she did not want to drive an older truck and, every time she was required to do so during a shift, she submitted a VCR reporting "a bunch of concerns that no one is able to duplicate." (*Id.*)

Anderson investigated the situation. (Anderson Dep. at 79.) He reviewed letters from mechanics on this issue, looked through past VCRs submitted by Plaintiff, and

interviewed mechanics. (*Id.*; ECF Nos. 78-18, 78-19, 78-20 & 78-22.) As a result of this investigation, Anderson believed that Plaintiff had intentionally falsified her VCRs. (Anderson Dep. at 77.)

On November 21, 2008, Anderson sent Kirby an e-mail expressing his concerns about Plaintiff's VCRs reporting problems that did not exist. (ECF No. 78-23.) Anderson, Kirby, and another member of Defendant's management team then had a conference call to discuss the situation. (Anderson Dep. at 91.) They all agreed that Plaintiff should be terminated. (*Id*. at 92.)

Plaintiff was terminated on November 25, 2008. (ECF No. 79-13.) The reason given for the termination was that Plaintiff's conduct "has been deemed contrary to the best interest of the company and other employees". (*Id*.) Plaintiff was 46 years old at the time of her termination. (Pl.'s Dep. at 14.)

**III. ANALYSIS**

On the facts set forth above, Plaintiff brings the following claims: (1) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); (2) gender discrimination and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); (3) discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*. ("ADA"); (4) discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"); and (5) wrongful discharge in violation of public policy. (ECF No. 1.)

In support of its Motion, Defendant argues that Plaintiff failed to timely exhaust all claims except those related to her termination and, in the alternative, that Plaintiff's

claims fail on the merits. (ECF No. 78.) The Court will address these arguments in turn below.

**A. Exhaustion**

A plaintiff generally must exhaust his or her administrative remedies before pursuing Title VII, ADEA, or ADA claims in federal court. See *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993) (Title VII); *Aronson v. Gressly,* 961 F.2d 907, 911 (10th Cir. 1992) (ADEA); *Castaldo v. Denver Public Sch*., 276 Fed. Appx. 839, 841 (10th Cir. 2008) (ADA). To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the Equal Employment Opportunity Counsel ("EEOC") setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "[A] plaintiff normally may not bring a[n] . . . action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Id*. at 1321.

In Colorado, for a charge of discrimination to be timely, it must be filed with the appropriate agency within 300 days of the complained-of conduct. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007); 42 U.S.C. § 2000e-5(e)(1); Colo. Rev. Stat. §§ 24-34-301 *et seq*. It is undisputed that Plaintiff submitted an intake questionnaire[1] to the EEOC on August 17, 2009 and that this was her earliest report of any discrimination or retaliation. (ECF No. 79-14.) Because Plaintiff was terminated on

---

[1] The parties have assumed that this intake questionnaire is sufficient to trigger exhaustion for purposes of ADEA, ADA, and Title VII. (ECF No. 78 at 18 n.2.) Because it does not affect the Court's analysis, the Court will undertake the same assumption.

November 25, 2008, which is less than 300 days before her filing with the EEOC, there is no dispute that she exhausted all claims related to her termination. However, the parties dispute whether this Court has jurisdiction over any employments actions other than Plaintiff's ultimate termination. Plaintiff argues that Defendant "engaged in a continuing course of discrimination" and, therefore, the October 2007 change in her work schedule and the April 2008 suspensions were also exhausted. (ECF No. 96 at 14.) Defendant argues that these were each discrete employment actions which triggered a separate 300 day limitations period. (ECF No. 78 at 18.)

Generally, each discrete act of discrimination starts its own 300 day limitation period for filing a charge as to that act. *Haynes v. Level 3 Comm'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006). However, in cases involving a hostile work environment, the Court can consider acts that occurred outside of the 300 day limitations window because such claims "cannot be said to occur on any particular day, and instead usually involve a pattern of acts that aren't actionable on their own but give rise to legal violation only when addressed in their totality." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (internal quotations omitted).

The problem with Plaintiff's argument is that she does not bring hostile work environment claims. Plaintiff does not allege that she faced a severe or pervasive hostile work environment; she instead complains about separate, discrete employment decisions such as a change to her work schedule and two different suspensions. (ECF No. 1.) As Plaintiff complains about discrete acts of discrimination, timely exhaustion required the filing of a charge within 300 days of each discrete act. *Haynes*, 456 F.3d at 1222; *AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002) (continuing violation doctrine

does not apply to disparate treatment claims as opposed to hostile work environment claims).

Plaintiff also argues that the EEOC did not reject her pre-October 2008 claims as untimely so the Court has jurisdiction over them. (ECF No. 96 at 14.) Plaintiff cites no authority for the contention that this Court has jurisdiction over an untimely filed claim simply because the EEOC did not reject such claim. The law is clear that a party must file a timely claim with the proper administrative agency in order to confer jurisdiction on this Court. *Simms*, 165 F.3d at 1326. Whether an administrative agency rejected claims based on their timeliness is irrelevant to whether a plaintiff's claims were properly exhausted.

Finally, Plaintiff contends that, with respect to the October 2007 Memorandum, she is bringing a disparate impact claim, and that disparate impact claims need not be exhausted. (ECF No. 96 at 16.) However, the Tenth Circuit has held that a charge alleging disparate impact claim must be filed within 300 days of the offending event. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 634 (10th Cir. 2012). The cases cited by Plaintiff do not call this authority into question. As such, Plaintiff was required to exhaust her disparate impact claim. Because Plaintiff did not file a charge with the EEOC within 300 days of receiving the October 2007 Memorandum, she did not exhaust any claims related to such receipt.

It is undisputed that Plaintiff's earliest contact with the EEOC was August 17, 2009. Therefore, the Court only has jurisdiction over any employment action which occurred no more than 300 days before August 17, 2009, which is October 21, 2008. The only employment action which occurred after October 21, 2008 was Plaintiff's

termination on November 25, 2008. Accordingly, the Court finds that it has jurisdiction over only those portions of Plaintiff's claims that relate to her termination.

**B. Merits of Plaintiff's Discrimination and Retaliation Claims**

Turning to the merits of Plaintiff's Title VII, ADEA, and ADA claims as they relate to her termination from employment, each is subject to the familiar *McDonnell-Douglas* burden-shifting test. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination or retaliation. *Id*. If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for its employment decision. *Id*. If Defendant does so, the inference of discrimination drops out and the burden shifts back to Plaintiff and she must offer evidence to show that race was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext. *Id.*

Below, the Court will discuss the merits of each claim in the context of *McDonnell-Douglas*.

1. <u>Age Discrimination</u>

Plaintiff alleges that she was discriminated against based on her age in violation of the ADEA. (ECF No. 1 at 16.) The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In order to establish a *prima facie* job termination claim based on age discrimination under the ADEA, a plaintiff must show that: (1) she is within the protected

age group; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position was either not filled or filled by a younger person. *See Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 920-21 (10th Cir. 2004) (citing *McKnight v. Kimberly Clark Corp*., 149 F.3d 1125, 1128 (10th Cir. 1998)). At the time of her termination, Plaintiff was in the protected age group, was doing satisfactory work, and was discharged. However, Plaintiff has failed to show that her position was either not filled or that it was filled by a younger person. In fact, the record is devoid of information about how or whether Plaintiff's position was filled at all and, to the extent it was filled, whether Plaintiff's replacement was older, younger or the same age as the Plaintiff. As such, Plaintiff has failed to meet her *prima facie* burden on her age discrimination claim.

In her opposition to the Motion, Plaintiff argues that she was discriminated against based on her age when Defendant removed her from her route and allowed Werner, her younger co-worker, to keep the route. (ECF No. 96 at 16.) However, this occurred in October 2007, which is outside the 300 day limitations period. As discussed above, the Court does not have jurisdiction over any claim related to Plaintiff's removal from her route and, as such, these facts cannot form the basis of Plaintiff's age discrimination claim.

The Court finds that Plaintiff has failed to meet her *prima facie* burden on her age discrimination claim. Accordingly, Defendant's Motion for Summary Judgment is granted as to this claim.

2. <u>Gender Discrimination</u>

Plaintiff alleges that she was discriminated against based on her gender. (ECF

No. 1 at 16.) To meet her *prima facie* burden on her gender discrimination claim, Plaintiff must show: (1) she was a member of a protected group; (2) she suffered an adverse employment action; and (3) she was terminated under circumstances that give rise to an inference of discrimination. *See Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

There is no dispute that Plaintiff, as a female, is a member of a protected class. With respect to the second prong, Plaintiff alleges that the removal from her route in October 2007 was an adverse employment action. (ECF No. 96 at 19.) Plaintiff also alleges that she was disciplined in October 2007 for excessive cell phone usage. (*Id*. at 20.) Even if the Court were to agree that these were adverse employment actions, they both occurred outside of the 300 day limitations period. As such, they cannot form the basis for Plaintiff's gender discrimination claim. *See Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 984 (10th Cir. 1991) (facts which fall outside of the 300 day limitations period and are not part of a continuing violation cannot form basis for discrimination claim), *overruled on other grounds by Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220 (10th Cir. 2000).

Plaintiff's termination was clearly an adverse employment action which occurred within the limitations period. Thus, the Court must consider whether Plaintiff has met her *prima facie* burden with respect to her termination. However, in the portion of her opposition brief that discusses gender discrimination, Plaintiff does not address her termination at all. (ECF No. 96 at 21.) She makes no attempt to point to facts showing that similarly situated male employees were not terminated for similar behavior or any

other circumstances existed that could give rise to an inference of gender-based discrimination. (*Id.*)

Moreover, the Court has no obligation to sift through Plaintiff's evidence to determine if there is a trial-worthy issue as to whether Plaintiff's termination was motivated by her gender. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her]."). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record.'" *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation omitted). In this case, Plaintiff has failed to come forward with any facts showing that she was terminated under circumstances that could give rise to an inference of gender discrimination. As such, she has failed to meet her *prima facie* burden and Defendant's Motion for Summary Judgment is granted as to Plaintiff's gender discrimination claim.

3. Disability Discrimination

Plaintiff next alleges that she was discriminated against based on her disability. (ECF No. 1 at 17.) To establish a *prima facie* case of disability discrimination, Plaintiff must show: (1) she was disabled; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) her employer discriminated against her because of her disability. *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012).

It is undisputed that Plaintiff was disabled after she returned to work in April 2006 due to the loss of functioning in one of her hands. The parties also do not dispute that, with the accommodation of being a "driver only", Plaintiff could perform the essential functions of her job. (ECF No. 78 at 21.) Thus, the Court assumes that Plaintiff has satisfied the first two prongs of her *prima facie* case.

With respect to the third prong, Plaintiff contends that the October 2007 Memorandum discriminated against her because of her disability. (ECF No. 96 at 22.) However, as discussed above, Plaintiff did not exhaust her claims related to the October 2007 Memorandum and, as such, her allegation that the Memorandum was disability discrimination is not properly before this Court. *Allen*, 928 F.2d at 984.

Plaintiff does not point to any other facts showing that she was discriminated against based on her disability. Significantly, she does not allege that her termination—the only employment action over which this Court has jurisdiction—was motivated in any way by her disability. The Court therefore finds that Plaintiff has failed to meet her *prima facie* burden and Defendant's Motion for Summary Judgment is granted as to Plaintiff's disability discrimination claim.

4. Retaliation

Plaintiff alleges that she was retaliated against in violation of Title VII and the ADA. (ECF No. 1 at 15-16.) In order to make out a *prima facie* case of retaliation, a plaintiff must present evidence that: (1) she engaged in activity protected by the relevant statute; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her protected activity and the employer's adverse action. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1215

(10th Cir. 2010).

Plaintiff does not explicitly address the three prongs of her *prima facie* burden, which makes it difficult for the Court to discern whether such burden has been met. She generally alleges that she was subjected to a hostile work environment after she complained about Werner's drinking on the job. (ECF No. 96 at 22-23.) It therefore appears that Plaintiff is alleging that her protected activity was reporting to Defendant's management team her concerns about her co-worker's possible drinking on the job. (*Id.*)

Plaintiff brings retaliation claims under both Title VII and the ADA, which are intended to prevent discrimination based on race, color, religion, sex, national origin (Title VII) and disability (ADA). Therefore, to satisfy her *prima facie* burden, she must show that she engaged in activity protected by either of these statutes. *See Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1411 (11th Cir. 2010) (a retaliation claim "requires that the protected activity involve the assertion of rights encompassed by the statute."); *Galdieri-Ambrosini v. Nat'l Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (a plaintiff bringing a retaliation claim must show that she "engaged in protected activity by opposing a practice made unlawful by Title VII").

Neither Title VII nor the ADA is intended to protect workplace safety or to promote an alcohol-free workplace. Thus, Plaintiff's report that her co-worker was impaired while he was working is not activity protected by either Title VII or the ADA. As such, Plaintiff has failed to meet her *prima facie* burden with respect to the first prong of her retaliation claims. *See Parker v. Salazar*, 431 F. App'x 697, 699 (10th Cir.

2011) (reporting co-workers affair is not protected activity under Title VII); *Boese v. Fort Hayes State Univ.*, 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011) (complaining about general work conditions is not protected activity).

Because Plaintiff has failed to show a genuine dispute of fact as to an essential element of her Title VII and ADA retaliation claims, Defendant's Motion for Summary Judgment is granted as these claims.

**C. Plaintiff's State Law Claims**

Though the issue has not been raised by any party, the Court has an independent duty to examine its jurisdiction at every stage of the litigation. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court had original jurisdiction over this case because Plaintiff alleged violations of the ADEA, ADA, and Title VII, which are federal statutes. *See* 28 U.S.C. § 1331. Because the Court had original jurisdiction over these claims, it also had supplemental jurisdiction over Plaintiff's two state law claims. *See* 28 U.S.C. § 1367.

This case is now in a fundamentally altered procedural posture given that the Court is herein granting summary judgment in favor of Defendant on all of the federal claims. Plaintiff's two remaining claims are firmly grounded in state law. A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law." *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 312 (2005). The Court finds that neither of the state law claims at issue in this case turn on substantial questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is

extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350.

If, as here, all federal claims are resolved before trial, the federal district court should ordinarily decline to exercise supplemental jurisdiction over the remaining state law claims by dismissing the case without prejudice. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). The Court finds that Plaintiff's remaining claims are grounded in state law and that there is no compelling reason to retain federal jurisdiction.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and such claims will be dismissed without prejudice. *See Brooks*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.

## IV. CONCLUSION

For the reasons set forth below, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 78) is GRANTED;

2. The Clerk shall enter judgment in favor of Defendant on Plaintiff's claims brought under the ADEA, ADA, and Title VII (Claims 1-5);

3. Plaintiff's claims for violation of the Colorado Anti-Discrimination Act (Claim 6) and Wrongful Discharge in Violation of Public Policy (Claim 7) are DISMISSED WITHOUT PREJUDICE.

4. Defendant shall have its costs.

Dated this 8th day of July, 2013.

BY THE COURT:

William J. Martínez
United States District Judge